**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**THOMAS LEWIS,**
**an individual,**

**Plaintiff,** **Case No.**

**v.**

**CITY OF CLEWISTON, FLORIDA,**
**a Florida municipality,**

**Defendant.**
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, THOMAS LEWIS ("Lewis" or "Plaintiff"), by and through the undersigned counsel, does bring this civil action against Defendant, CITY OF CLEWISTON, FLORIDA, (the "City" or "Defendant") and alleges as follows:

### Nature of the Action

This action is brought under the First Amendment of the U.S. Constitution, via 42 U.S.C. §1983 and the anti-retaliation provision of Florida Worker's Compensation statute, §440.205 *et seq.*, Fla. Stat., to redress Defendant's unlawful employment practices, including Defendant's wrongful and illegally motivated termination of Plaintiff's employment.

**Parties**

1. Plaintiff was a resident of Sarasota County, Florida at all times relevant to this matter and was formerly employed by Defendant as its Chief of Police.

2. Defendant is a Florida municipality located in Hendry County, Florida at all times pertinent to Plaintiff's claims.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 & 1345.

4. The Middle District of Florida, Fort Myers Division is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which Plaintiff resides and in which the events or omissions giving rise to the claims occurred.

5. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, if any.

**FACTUAL BACKGROUND**

6. In or about April of 2021, Defendant hired Lewis as a police officer, whereby he was subsequently promoted by Defendant to Chief of Police on or about June 2, 2021.

7. At the time Lewis became Chief he had worked in law enforcement for approximately twenty-five (25) years, previously serving as Police Chief for Punta

Gorda, Florida for approximately nineteen (19) years, as well as working for Florida's Department of Corrections for over five (5) years.

8. Lewis' tenure as Chief of Police was great during most of his employment. He was able to turn the police department around from one that had a number of administrative and functional issues to one that was accredited by the state within two (2) years of his hiring. Lewis received a great deal of support from City personnel in achieving such success, which was reflected in his being awarded Director of the Year for the City.

9. Unfortunately, Lewis' work environment, as well as the City's structure to operate within a proper legal framework, began to change in the Spring of 2025.

10. On or about April 2, 2025, the City offered Jorge Soto ("Soto") the position of Director of Operations. Soto had been working as a contractor for the City, was a friend of City Manager Danny Williams ("Williams") and nephew to City Commissioner Mali Soto-Gardner.

11. Per City policy the human resources ("HR") department requested that Soto undergo an applicant background investigation.

12. Pursuant to the initial background investigation process, on or about April 11, 2025, it was discovered that Soto was an active suspect in a criminal case for alleged sexual solicitation of a minor and that an arrest was pending.

13. Upon learning of the foregoing information on the applicant, Lewis

requested a meeting with Detective Charles Williams, City Manager Williams, and HR Director Ashly Sergent, which ultimately occurred in Plaintiff's office.

14. During said meeting Lewis provided the attendees with the above details that had been uncovered so far regarding the applicant.

15. Based upon such information it was decided during the meeting that Soto would not be hired; a decision for which Lewis vocalized his support.

16. That same day Williams acknowledged in a text message exchange that he had previously been aware of the pending "case" against Soto and/or the information that Lewis had shared that day, as well as the applicant's alleged cocaine usage.

17. Based upon the decision not to move forward with hiring Soto, the mandatory background check of him ceased and was not completed. Both City Manager Williams and the HR Director were instructed not to reveal any of the information related to the criminal investigation to the suspect or anyone else as it could jeopardize the investigation or create an officer safety issue as he was to be arrested at a later date.

18. Shockingly, it was later revealed that on April 13, 2025, City Manager Williams had communicated information regarding the criminal investigation that had been discussed during the above meeting two (2) days prior via text message to Soto himself. In doing so Williams' conduct constituted a violation of Florida

Statute 838.21, a third-degree felony.[1]

19. Likewise, despite the decision not to hire Soto, on April 14, 2025, HR Director Ashly Sergent sent a text message to Soto inquiring if he was able to start employment the following day on April 15, 2025; something he confirmed to in the affirmative.

20. Soto subsequently began his employment with the City on April 15, 2025, as the Director of Operations. However, despite his new position with the City Soto remained as a paid contractor with the City during the time frame of his employment. The foregoing is a violation of Florida Statute 112.313 (misdemeanor), Florida Statute 838.022 (felony), Florida Statute 838.016 (felony), Florida Statute 838.022 (felony), and Florida Statute 812.014. Likewise, the described conduct violated Florida Ethics Codes.

21. On or about April 17, 2025, Lewis arrived for a regularly scheduled Directors' meeting at the City Manager William's Office. Soto was then introduced to Lewis and the other City Directors as the new Operations Director; the first time that a shocked Plaintiff learned that Williams and the HR Director had moved forward with hiring Soto despite the decision not to do so six (6) days prior.

22. In hiring Soto, the Defendant violated its own Ordinance 2-200, Article

---

[1] The text messages in question were later discovered after a search warrant was served on Soto's phone after his arrest on the aforementioned charges for Solicitation of a Minor.

V – EMPLOYMENT SCREENING, which outlines the requirements of a completed fingerprint-based background check/employment screening. The foregoing ordinance was enacted by Defendant pursuant to Florida Statute 166.0442, which addresses such criminal background checks. Defendant's failure to perform a requisite Level 2 background check, which was not completed on Soto before hiring him in contravention of said ordinance and statute, was a misdemeanor criminal violation.

23. Soto was subsequently arrested on or about May 21, 2025, and charged with Solicitation of a Minor and booked in the Hendry County Jail.

24. In response to widespread coverage of Soto's arrest by news outlets and social media reports, as well as the City receiving many questions from the public regarding same, the Defendant stated on their Facebook page that Soto's employment had been terminated on May 27, 2025.

25. On June 19, 2025, Lewis attended an initial budget meeting at City Manger Williams' office. Other attendees included Williams, Finance Director Randy Maxson and HR Director Sergent.

26. During the meeting Plaintiff was informed that six (6) positions were being eliminated from the police department or twenty-four percent (24%) of the department itself, including both Commander positions, the only Accreditation Manager, the only Evidence Technician, the only Detective and a Dispatcher position

that was currently vacated.

27. Lewis questioned the above action and was told that the Hendry County Sheriff's Office would be handling evidence, crime scene, and investigations after October 1, 2025, though it was admitted that this plan had not been discussed with the Sheriff's Office.

28. Lewis gleaned from the conversation and the tone in the room that this action was undertaken against Lewis in retaliation for his opposition to Soto's hiring. There had never before been any discussion or a conversation regarding any cuts or issues with the police department's budget.

29. As the discussion continued Lewis was told that he was to eliminate Commander Daniel Brophy's employment position specifically due to his on-going worker's compensation claim. Likewise, Plaintiff was told to eliminate Commander Tom Levins' position to distract from and hide the fact that Defendant was targeting Commander Brophy in such an obvious retaliatory manner.

30. Lewis was stunned by the illegal retaliatory instructions and discourse he was listening to and began to write down contemporaneous notes during the meeting.

31. While Plaintiff was doing so HR Director Sergent asked Lewis in an excited manner, "Oh my God, you're not writing that down, are you?" To protect the notes which memorialized his employer's illegal animus and retaliation against

Commander Brophy he denied same, to which she replied, "Thank God."

32. Targeting Commander Brophy in retaliation for his having filed a valid worker's compensation claim was illegal and violated Florida Statute 440.205.

33. Lewis was informed that he would be the one notifying the employees of their terminations. He inquired if any of the cuts were negotiable if he could find other areas of the budget to do so but was informed it was non-negotiable.

34. City Manager Williams was intentionally creating an environment whereby the police department could no longer investigate or collect evidence on the City Manager's friends or potential applicants.

35. On June 23, 2025, Lewis sent an email to City Manager Williams and Finance Director Maxson objecting to and voicing concerns regarding police department positions that were being eliminated. Plaintiff conveyed his fear that doing so jeopardized compliance with evidence handling laws and that eliminating both Commander roles could result in legal issues, including non-compliance with statutory due process requirements for internal affairs cases.

36. Plaintiff's email to both men were completely ignored and Lewis never received any response. However, Lewis would later learn that City Manager Williams had forwarded the email to his personal email account.

37. Previously, on June 20, 2025, HR Clerk Jeanie Orozco had sent Lewis a request for an applicant background investigation into a Christopher Cooper who

was applying for the position of Building Official with the Defendant.

38. On or about June 27, 2025, Lewis sent a text message to City Manager Williams wherein he provided him with disturbing information regarding applicant Christopher Cooper, but Plaintiff received no response from same.

39. Plaintiff thereafter called HR Director Sergent and informed her that the background investigation revealed Cooper had a previous arrest for having sex with a minor. HR Director Sergent called Plaintiff back and stated that she spoke to City Manager Williams, who informed her that he was already aware of the arrest and criminal allegations, but that Williams had decided to hire Copper regardless. She also stated to Lewis during their phone call that she was documenting what had transpired in discussing the matter with Williams because she did not agree with his hiring decision.

40. In addition to two (2) other misdemeanor arrests, the arrest of Cooper was for the charge of Sexual Battery on a Child. That charge was ultimately pled down to a reduced charge of Aggravated Battery Causing Bodily Harm or Disability. He was sentenced to eight (8) years or Sex Offender probation.

41. On or about June 27, 2025, The City's Mayor, James Pittman, sent Lewis a text requesting to meet with him. The two met and the Mayor asked Lewis questions regarding applicant Cooper and whether he had a previous arrest for having sex with a minor. He also asked Lewis if City Manager Williams had prior

knowledge of the pending Soto arrest before Williams decided to hire him; something that Williams had falsely denied to Mayor Pittman.

42. Lewis showed Mayor Pittman the text messages proving the City Manager had lied to him. Moreover, Plaintiff informed the mayor that the Defendant City via City Manager Williams had violated the law and City Ordinance as described above.

43. On or about July 1, 2025, Lewis provided HR Director Sergent the completed applicant background investigation summary for Christopher Cooper via email, outlining the previously discussed criminal charges and conviction.

44. Despite Cooper's background investigation disclosing a disqualifying criminal conviction as enumerated in Florida Statute 435.04, as well as City Ordinance 2-200, Defendant hired him regardless to serve in the Building Official position sometime between July 2, 2025, and July 15, 2025.[2]

45. On or about July 11, 2025, Mayor Pittman met with Lewis and informed Plaintiff that he had just learned about the City Manager's plan to eliminate the six (6) police department positions.

46. Lewis explained to the Mayor that this was done against him punitively

[2] Worth noting is that on or about July 1, 2025, the City moved its pension 401(a) and 457 accounts valued at millions of dollars away from The Standard & John Hancock Investments to Edward Jones (Empower) which is managed by Al Perry, the Defendant's former City Manager and friend who hired and promoted current City Manager Williams. It would later be determined to constitute Bid Tampering, a violation of Florida Statute 838.22, and a second-degree felony.

in retaliation for Plaintiff opposing Soto's hiring, Soto losing his job and ultimately being arrested as well, in addition to his other complaints of legal violations.

47. Additionally, Lewis explained to the Mayor that Commander Brophy's position was eliminated solely due to his having filed and utilizing benefits pursuant to a valid worker's compensation claim. He explained that this was an overt admission by City Manager Williams and an illegal motive under Florida Statute 440.205.

48. The Mayor stated to Lewis that he had learned in his meeting with the City Manager that the plan was to take the operating line-item budget allocations and greatly reduce them to purchase vehicles.

49. Lewis informed the Mayor in their discussion that City Manager Williams was aware that there is a 5% limit on the budget reduction and was going to circumvent the law by waiting until the budget was already approved with a 4.8% reduction and then reduce it more after the fact. Lewis explained that this would clearly be a violation of Florida Statute 166.241 (4)(a).

50. On July 14, 2025, the Hendry County Sheriff phoned Clewiston City Commissioners and informed them that he was aware of what was going on and about the series of legal violations discussed above, as Lewis had been disclosing same to the Sheriff during the last several weeks. At least one of the Commissioners reported the Sheriff's revelation to City Manager Williams.

51. In addition to Lewis' disclosures of legal violations to the Mayor himself, it was now known by Defendant that Plaintiff had reported the wrongdoing and legal violations to the Sheriff.

52. There was an immediate change in the manner and demeanor with which City Manager Williams treated Lewis in the workplace. Now Plaintiff's phone calls, texts, and emails were essentially ignored, and any communications they did have were much shorter than normal.

53. That same day, July 14, 2025, Defendant held its first budget hearing with the City Commission. City Manager Williams texted Lewis, telling him not to come to the meeting, though no reason was provided. This was the first year since Plaintiff's employment as Chief of Police that he was not permitted to attend.

54. Just as unusual was that, unlike the City's normal process, this meeting was not live streamed on YouTube; an obvious attempt to keep the public and City employees in the dark regarding the pending employment position cuts, among other things.

55. During the next several days Lewis began to hear rumors that City Manager Williams was going to terminate Plaintiff's employment.

56. On July 30, 2025, Lewis met with City Manager Williams and HR Director Sergent wherein Williams demanded the Plaintiff's resignation; a constructive termination. Lewis requested that he at least be provided a few weeks

to obtain other employment but was told instead that "it's time for you to go, you need to start immediately."

57. In ending Plaintiff's employment, City Manager Williams provided Lewis with no reason or basis for the termination decision, including not citing any performance issues.

58. The following day, July 31, 2025, a City Commission budget workshop meeting was held where Lewis had previously been scheduled to present the police department budget to the full City Commission.

59. Plaintiff had previously submitted to City Manager Williams an alternate budget proposal which made the exact same monetary reductions in the budget without eliminating a single employee while avoiding violating the law regarding the retaliatory targeting of Commander Brophy or circumventing the law regarding defunding the police department. Lewis received no response from Williams after providing him the alternative legal budget proposal.

60. Lewis attended the budget workshop meeting as scheduled. Near the end of the meeting Lewis asked what he would be presenting in reference to the budget and was told that he could present whatever alternate proposal he had. As such, Lewis presented his previously submitted budget proposal.

61. At the conclusion of Plaintiff's presentation, the City Finance Director told the City Commission that he was still recommending all of the position cuts,

and Williams commented that he would be making the final decision.

62. On August 23, 2025, Lewis submitted his letter of resignation, terminating his employment via email pursuant to City Manager Williams' prior termination decision, which provided the City with a thirty (30) day notice as mandated by the Defendant's rules.

63. On August 24, 2025, Lewis determined that his emails to the City were not connecting as he appeared to have been locked out. As a result, Plaintiff called HR Director Sergent, who notified Lewis that he wasn't to return to work except to return any city-issued property to her on August 25, 2025, which would be deemed his final day at the police department. Lewis was paid for an additional thirty (30) days thereafter, with his forced resignation effective September 23, 2025.

64. During that last interaction with HR Director Sergent, Lewis asked her if he had done anything wrong, to which she stated no. Reflecting same she subsequently provided him a letter on Defendant's letterhead stating that he had left in good standing. She would soon after resign her employment on September 2, 2025.

65. On October 1, 2025, the Hendry County Sheriff's Office served a criminal search warrant on Clewiston City Hall, seizing computers, phones, and documents. This search warrant was directly caused by the criminal information that Lewis had provided to the Sheriff's office. During the search warrant, it was

reported that the Finance Director Maxson provided a recorded statement that Lewis had been forced to resign by City Manager Williams in retaliation for Lewis' prior objections to the City's illegal conduct and improper behavior described above.

66. On October 6, 2025, the City's Mayor called a Special Commission Meeting to discuss the possibility of limiting the City Manager's ability to hire and fire employees, as well as limit his ability to enter into or sign contractual agreements.

67. During the meeting, City manager Williams and some Commissioners made disparaging remarks about Lewis, attempting to deflect responsibility for the ramifications of their conduct and to continue retaliating against Plaintiff for his have engaged in legally protected speech which addressed matters of public concern.

68. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

69. As a result of the foregoing, Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel a reasonable attorney's fee.

## COUNT I - VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION, VIA 42 U.S.C. § 1983

70. Plaintiff realleges Paragraphs 1 through 69 as if fully set forth herein.

71. At all times material hereto, Plaintiff was employed by the City and was acting as a private citizen when he spoke publicly regarding the City's violations of City ordinances, Florida law and other matters of public concern, as described above.

72. Plaintiff's speech addressed matters of public concern, including the violations of City ordinances and Florida law as described above.

73. Plaintiff's speech was protected by the First Amendment to the United States Constitution.

74. City manager Williams acted under color of state law and within the scope of his authority as City Manager, when he became aware of Plaintiff's protected speech.

75. Following Plaintiff's protected speech, City manager Williams subjected Plaintiff to adverse employment actions, including terminating and/or constructively terminating Plaintiff’s employment.

76. Plaintiff's protected speech was a substantial or motivating factor in Defendant’s decision to take adverse employment action against him.

77. Defendant’s actions would deter a person of ordinary firmness from engaging in protected speech.

78. Defendant lacked an adequate governmental justification for its retaliatory conduct.

79. As a direct and proximate result of Defendant’s actions, Plaintiff has suffered damages, including lost wages, lost benefits, emotional distress, mental anguish, reputational harm, and other compensatory damages.

80. Defendant City is liable because the retaliatory actions were taken

pursuant to an official policy, custom, practice, or by a final policymaker whose decisions constituted municipal policy.

**WHEREFORE**, Plaintiff, THOMAS LEWIS, respectfully requests that this Court enter judgment against Defendant, CITY OF CLEWISTON, FLORIDA, in favor of said Plaintiff, awarding him: actual damages; compensatory damages; reinstatement or front pay in lieu thereof; back pay and lost benefits or the value thereof; prejudgment interest; reasonable attorney(s) fees and costs (including expert fees) pursuant to 42 U.S.C. § 1988; declaratory and injunctive relief as appropriate; and such additional relief as the Court deems just and equitable.

**COUNT II – VIOLATION OF FLORIDA'S WORKER'S COMPENSATION STATUTE'S ANTI-RETALIATION PROVISIONS, §440.205**

81. Plaintiff, realleges Paragraphs 1 through 69 as if fully set forth herein.

82. Commander Brophy sought worker's compensation benefits for injuries sustained within the course and scope of his employment with Defendant.

83. Defendant sought to terminate Commander Brophy in retaliation for his pursuit of benefits under Florida's worker's compensation statute.

84. Plaintiff opposed and objected to Defendant's retaliatory termination efforts against Brophy, including that Plaintiff was instructed to terminate Brophy.

85. Defendant subsequently treated Plaintiff in an adverse and hostile manner, including terminating Plaintiff's employment in part due to Plaintiff

objecting to and voicing concern regarding Defendant's retaliatory termination efforts of Brophy and its attempt to include Plaintiff in such a retaliatory employment decision in violation of §440.205*, et seq.,* Fla. Stat.

86. Plaintiff has suffered damages as a direct and proximate result of Defendant's breached obligations.

**WHEREFORE**, Plaintiff, THOMAS LEWIS, respectfully requests that this Court enter judgment against Defendant, CITY OF CLEWISTON, FLORIDA, in favor of said Plaintiff, awarding him: actual damages; compensatory damages; reinstatement or front pay in lieu thereof; back pay and lost benefits or the value thereof; prejudgment interest; reasonable attorney(s) fees and costs (including expert fees) pursuant to §440.205*, et seq.,* Fla. Stat.; declaratory and injunctive relief as appropriate; and such additional relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all counts so triable.

Dated: September 30, 2026

Respectfully submitted,

**TOBIN LAW GROUP, PLLC**

*/S/ Bradley A. Tobin*
Bradley A. Tobin, Esquire
Florida Bar No. 0101818
Westchase Commons
13043 W. Linebaugh Ave.
Tampa, Florida 33626
Tel: 813.452.6199
Fax: 813.830.7200
Email: btobin@tobinlawgroup.com
*Attorney(s) for Plaintiff.*